1
2
3

# UNITED STATES DISTRICT COURT

4

EASTERN DISTRICT OF CALIFORNIA

5

6

7

8

9

10

| | |
|---|---|
| DOUGAL SAMUELS, | CASE NO. 1:10-cv-00 585  GSA |
| Plaintiff, | ORDER DISMISSING COMPLAINT, WITH LEAVE TO FILE AMENDED COMPLAINT WITHIN THIRTY DAYS |
| v. | |
| PAM AHLIN, et al., | (ECF No. 1) |
| Defendants. | |
| _____/ | |

11

12

**Screening Order**

13

**I.     Screening Requirement**

14

Plaintiff is a civil detainee proceeding pro se and in forma pauperis in this civil rights action

15

pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act (ADA).     Plaintiff has

16

consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).

17

The Court is required to screen complaints brought by detainees seeking relief against a

18

governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

19

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

20

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

21

monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

22

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

23

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

24

claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

25

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

26

exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S.

27

506, 512 (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and

28

plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).

1

1  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the

2  grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.  However, "the liberal pleading

3  standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330

4  n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply essential elements

5  of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257

6  (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

7  **II.      Plaintiff's Claims**

8          Plaintiff is a civil detainee housed at Coalinga State Hospital (CSH).  Plaintiff brings this

9  civil rights action against the following defendants: The Department of Mental Health; CSH

10 Executive Director Pam Ahlin; Dr. Peter Bresler.

11         Plaintiff claims that he was denied adequate medical care.  Specifically, Plaintiff alleges that

12 Defendants failed to adequately treat him for valley fever.

13         Plaintiff's complaint sets forth allegations regarding the conduct of Defendants in general

14 regarding health care at CSH.  Plaintiff alleges that CSH's "supports and services" are not within the

15 generally accepted professional standards of care in certain respects, that Defendants have failed to

16 adequately assess individuals housed at CSH to ensure that they are receiving adequate treatment,

17 that Defendants generally are deliberately indifferent to the medical treatment of CSH inmates, and

18 that Defendants generally discriminate against residents with disabilities in violation of the

19 Americans With Disabilities Act and the California Disabled Person's Act.

20         Regarding Plaintiff in particular, Plaintiff alleges that in April of 2006, two months after he

21 was transferred to CSH, he experienced coughing, appetite loss, and chills.  Plaintiff alleges that he

22 complained to Dr. Bresler, but "was ignored."  Plaintiff was seen by Dr. Bresler in August of 2006.

23 Plaintiff was treated for inflammation of the chest.  Plaintiff's symptoms persisted, and Dr. Bresler

24 eventually diagnosed Plaintiff with Valley Fever.  Plaintiff was placed in isolation for 12 days.

25 During that time, Plaintiff was diagnosed with pneumonia, and an x-ray revealed a mass in his right

26 lung.  Further testing indicated that Plaintiff had valley fever.  Plaintiff was prescribed Flucomazone,

27 an anti-fungal medication.

28         Plaintiff had an allergic reaction to Flucomazone.  Plaintiff told Dr. Bresler about the allergic

1   reaction, which included burning on the hands and arms, itching, leg rashes and blisters on the

2   bottom of Plaintiff's feet.  An MRI was ordered, but not completed, because CSH "was not paying

3   its bills, so the MRI facility denied any further testing."  Plaintiff advised Dr. Bresler that it was

4   "impossible" to continue taking Flucomazone.  Dr. Bresler told Plaintiff that "there was no other

5   medications available to treat his bacterial condition."

6         Plaintiff continued to lose weight and suffered from cold sweats, lower back pain and "sciatic

7   nerves."  Plaintiff alleges that "the doctor" prescribed pain pills, but the pain worsened, and Plaintiff

8   could not get a physician to see him.  In April 2007, Plaintiff, without an appointment, went to the

9   clinic, laid down on the floor and complained of intense pain in his lower back.  Plaintiff alleges that

10

11           The staff tried to get him to quit complaining and making agonizing
             cries.  He told them that he was in pain and needed help.  The staff
12           ignored him for a while.  Finally, Dr. Jonathan Hamrick came out and
             asked him what the problem was.  He told the doctor that he was in
13           pain and could not sit up and had to lie down, and it is why he laid on
             the floor.  Dr. Hamrick took Plaintiff to the x-ray room.  The x-ray
14           did not show anything.  Dr. Hamrick then ordered and MRI.  It took
             about two months before the MRI was able to be performed
15

16   The MRI indicated a large black mass in the lumbar region.  It was diagnosed as an inflammation

17   of the spine caused by Valley Fever, and "was eating his spine and vertebra from the inside,

18   destroying it."  Plaintiff was advised by a doctor that he needed immediate surgery, or he would be

19   paralyzed.  Plaintiff was admitted to the hospital the same day and underwent surgery.  The surgeon

20   "removed a disc and part of the spine, cut sciatic nerves, repaired vertebras and installed a steel

21   plate."  Plaintiff was then placed in a body cast.

22         A.    **Valley Fever**

23         "[T]o the extent that Plaintiff is attempting to pursue a claim for the mere fact that he was

24   confined in a location where Valley Fever spores existed which caused him to contract Valley Fever,

25   he is advised that no courts have held that exposure to Valley Fever spores presents an excessive risk

26   to inmate health."  King v. Avenal State Prison, 2009 WL 546212, *4 (E.D. Cal., Mar 4, 2009); see

27   also Tholmer v. Yates, 2009 WL 174162, *3 (E.D. Cal. Jan. 26, 2009).  Defendants cannot,

28   therefore, be held liable for subjecting Plaintiff to dangerous conditions.

1          **B.     Medical Care**

2          A civilly committed person's claim that his medical care violated constitutional standards

3    is governed by the "professional judgment" standard set forth in Youngberg v. Romeo, 457 U.S. 307

4    (1982). "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed

5    only when the decision is such a substantial departure from accepted professional judgment, practice,

6    or standards as to demonstrate that the person responsible actually did not base the decision on such

7    a judgment." Id. at 323.  Under this "professional judgment" standard, mere negligence or medical

8    malpractice does not violate the Constitution.  See Patten v. Nichols, 274 F.3d 829, 852-43 (4th Cir.

9    2001)(applying Youngberg "professional judgment" standard to a denial of medical care claim by

10   a civilly committed psychiatric patient and holding that more than negligence is required).

11         Here, Plaintiff has alleged facts that indicate, at most, negligence.  Plaintiff alleges facts

12   indicating that Dr. Bresler treated Plaintiff as late as August of 2006.  Dr. Bresler prescribed a

13   medication, Flucomazone.  Plaintiff indicated an allergic reaction to the medication, and advised Dr.

14   Bresler.  Plaintiff does not allege that there was a treatment available that Dr. Bresler refused him.

15   Dr. Bresler indicated that Flucomazone was the only treatment available.

16         Although Plaintiff alleges that he continued to suffer, and that he could not get a physician

17   to see him, he does not allege any facts indicating that Dr. Bresler was responsible for this, or caused

18   Plaintiff not to be seen.   Further, Plaintiff does not allege facts indicating that Dr. Bresler knew of

19   the symptoms suffered by Plaintiff in June of 2007.   Simply put, Plaintiff has not alleged facts that

20   link the conduct of Dr. Bresler to his injuries.  Plaintiff must allege some facts indicating that Dr.

21   Bresler was aware of a serious condition, and failed to respond to it.  The complaint, taken as true,

22   alleges that Dr. Bresler treated Plaintiff with what he believed to be the only indicated medication.

23         **C.     ADA**

24         Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act

25   (RA) "both prohibit discrimination on the basis of disability." Lowell v. Chandler, 303 F.3d 1039,

26   1052 (9th Cir. 2002).  Title II of the ADA provides that "no qualified individual with a disability

27   shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

28   services, programs, or activities of a public entity, or be subject to discrimination by such entity."

1  42 U.S.C. § 12132; see also Lowell, 303 F.3d at 1052 (to establish violation of Title II of ADA,

2  Plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from

3  participation in or otherwise discriminated against with regard to a public entity's services, programs,

4  or activities, and (3) such exclusion or discrimination was by reason of his disability), cert. denied,

5  537 U.S. 1105 (2003).  Although the term "public entity" includes state prisons, it does not include

6  individuals such as the defendants in this action.  See Pennsylvania Dept. Of Corrections v. Yeskey,

7  524 U.S. 206 210 (1998) (state prisons fall squarely within statutory definition of "public entity");

8  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) (a plaintiff cannot sue state officials in their

9  individual capacities to vindicate rights created by Title II of the ADA), cert. denied, 537 U.S. 1104,

10 (2003); Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) (no personal liability under Title II of

11 ADA), cert. denied, 531 U.S. 1190 (2001); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8

12 (8th Cir. 1999) (en banc) (a plaintiff cannot sue government actors in individual capacities for the

13 alleged violations of the ADA).  Accordingly, Plaintiff's claim is not cognizable against defendants

14 in their individual capacities.

15      Further, the treatment or lack of medical treatment for Plaintiff's condition does not provide

16 a basis upon which to impose liability.  Burger v. Bloomberg, 418 F.3d 882 (8th Cir. 2005) (medical

17 treatment decisions not basis for ADA claims); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134,

18 1144 (10th Cir. 2005) (medical decisions not ordinarily within the scope of the ADA); Bryant v.

19 Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical

20 malpractice.").  Aside from Defendants' medical treatment decisions of which Plaintiff complains

21 and which are not an appropriate basis upon which to predicate an ADA claim, Plaintiff alleges no

22 facts to show that any named Defendant participated in, or was otherwise responsible for, excluding

23 him from numerous activities, programs, and benefits otherwise available to him.  Therefore,

24 Plaintiff fails to state a cognizable claim for violation of his rights under Title II of the ADA.

25      **D.    Supervisory Liability**

26      Plaintiff names as a defendant Pam Ahlin, Director at CSH.   Under section 1983, Plaintiff

27 must prove that the Defendants holding supervisory positions personally participated in the

28 deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There is no

1  respondeat superior liability, and each defendant is only liable for his or her own misconduct.

2  Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009).  A supervisor may be held liable for the constitutional

3  violations of his or her subordinates only if he or she "participated in or directed the violations, or

4  knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th

5  Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011); Corales v. Bennett, 567

6  F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d

7  1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).  Plaintiff has

8  not alleged any facts suggesting personal participation by Defendant Ahlin.  She should therefore

9  be dismissed.

10       **E.       Department of Mental Health**

11       "The Eleventh Amendment prohibits federal courts from hearing suits brought against an

12  unconsenting state.  Though its language might suggest otherwise, the Eleventh Amendment has

13  long been construed to extend  to suits brought against a state both by its own citizens, as well as by

14  citizens of other states."  Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th

15  Cir. 1991); see also Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996); Puerto Rico Aqueduct

16  Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys.,

17  939 F.2d 676, 677 (9th Cir. 1991).

18       The Eleventh Amendment bars suits against state agencies as well as those where the state

19  itself is named as a defendant.  See Natural Resources Defense Council v. California Department of

20  Transportation, 96 F.3d 420, 421 (9th Cir. 1996); Brooks, 951 F.2d at 1053; Taylor v. List, 880 F.2d

21  1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency

22  entitled to Eleventh Amendment immunity); Mitchell v. Los Angeles Community College District,

23  861 F.2d 198, 201 (9th Cir. 1989).  The California Department of Mental Health, as an agency of hte

24  State of California, is immune from suit.

25  **III.    Conclusion and Order**

26       The Court has screened Plaintiff's complaint and finds that it does not state any claims upon

27  which relief may be granted under section 1983 or the ADA.  The Court will provide Plaintiff with

28  the opportunity to file an amended complaint curing the deficiencies identified by the Court in this

1    order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff is cautioned that he may

2    not change the nature of this suit by adding new, unrelated claims in his amended complaint.

3    George, 507 F.3d at 607 (no "buckshot" complaints).

4         Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each

5    named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights,

6    Hydrick, 500 F.3d at 987-88.  Although accepted as true, the "[f]actual allegations must be

7    [sufficient] to raise a right to relief above the speculative level . . . ."  Bell Atlantic Corp. v.

8    Twombly, 550 U.S. 544, 554 (2007) (citations omitted).

9         Finally, Plaintiff is advised that an amended complaint supercedes the original complaint,

10   Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

11   (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded

12   pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original

13   complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing

14   to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at

15   1474.

16        Accordingly, based on the foregoing, it is HEREBY ORDERED that:

17        1.    Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;

18        2.    The Clerk's Office shall send to Plaintiff a complaint form;

19        3.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an

20              amended complaint;

21        4.    Plaintiff may not add any new, unrelated claims to this action via his amended

22              complaint and any attempt to do so will result in an order striking the amended

23              complaint; and

24        5.    If Plaintiff fails to file an amended complaint, the Court will dismiss this action, with

25              prejudice, for failure to state a claim.

26

27

28        IT IS SO ORDERED.

1    Dated:   **July 26, 2012**                    /s/ **Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28