1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   DOUGAL SAMUELS,                         1:10-cv-00585-GSA-PC

12            Plaintiff,                      ORDER DISMISSING THIS ACTION,
                                              WITH PREJUDICE, FOR FAILURE TO
13        vs.                                 STATE A CLAIM UPON WHICH RELIEF
                                              MAY BE GRANTED
14   PAM AHLIN, et al.,                       (Doc. 15.)

15            Defendants.                      ORDER FOR CLERK TO CLOSE CASE

16

17

18   **I.       BACKGROUND**

19          Dougal Samuels is a civil detainee proceeding pro se and in forma pauperis with this

20   civil rights action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act

21   (ADA).  Plaintiff filed the Complaint commencing this action on April 5, 2010.  (Doc. 1.)  On

22   April 14, 2010, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28

23   U.S.C. § 636(c), and no other parties have made an appearance.  (Doc. 7.)  Therefore, pursuant

24   to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned

25   shall conduct any and all proceedings in the case until such time as reassignment to a District

26   Judge is required.  Local Rule Appendix A(k)(3).

27   ///

28   ///

                                              1

1    On July 26, 2012, the Court dismissed the Complaint for failure to state a claim, with

2    leave to amend.  (Doc. 12.)  On November 2, 2012, Plaintiff filed the First Amended

3    Complaint, which is now before the Court for screening.  (Doc. 15.)

4    **II.     SCREENING REQUIREMENT**

5    The court is required to screen complaints brought by detainees seeking relief against a

6    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

7    The court must dismiss a complaint or portion thereof if the detainee has raised claims that are

8    legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

9    that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

10   § 1915A(b)(1),(2).  The in forma pauperis statutes provides that "the court shall dismiss the

11   case at any time if the court determines that . . . the action or appeal . . . fails to state a claim

12   upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

13   A complaint is required to contain "a short and plain statement of the claim showing

14   that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations

15   are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

16   mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct.

17   1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955

18   (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge

19   unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009)

20   (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual

21   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal 556 U.S.

22   at 678.  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere

23   possibility of misconduct falls short of meeting this plausibility standard.  Id.

24   **II.     SUMMARY OF FIRST AMENDED COMPLAINT**

25   The events at issue in the First Amended Complaint occurred at Coalinga State Hospital

26   (CSH) in Coalinga, California, where Plaintiff is currently detained.   Plaintiff names as

27   defendants Pam Ahlin (ex-Executive Director), Stephen Mayberg (ex-Director, Dept. of Mental

28   ///

Health (DMH)), Fresno County Board of Supervisors, Arnold Schwarzenegger (ex-Governor of the State of California), and Doe Defendants 1-10.  Plaintiff's factual allegations follow.

Plaintiff arrived at CSH on or about February 16, 2006.  In April 2006, Plaintiff developed severe coughing, loss of appetite, and cold sweats and chills at night, which lasted for weeks.  When he complained to Dr. Bresler, his treating physician, he was told to sign up with the sick call nurse.  Each day afterwards, Plaintiff's physical condition worsened, even with medical treatment.  In August 2006, Dr. Bresler prescribed medication for inflammation of Plaintiff's chest for ten days, to combat bacterial infection.  Plaintiff's symptoms persisted, and Dr. Bresler diagnosed him with Coccidioidomycosis, the disease known as Valley Fever, and placed him in isolation for ten days.  During isolation, it was discovered that Plaintiff had pneumonia.  An x-ray was taken, which revealed a large black mass in his right lung, indicating that his condition was worse than expected.  Plaintiff's blood, urine, and sputum were tested, confirming that he was suffering from a dangerous form of Valley Fever.  Dr. Bresler prescribed Flucomazone, an anti-fungal medication, which caused Plaintiff to experience an allergic reaction, with burning on his hands and arms, rashes on his legs, and blisters on his back and feet.  When Plaintiff told the doctor he was unable to continue taking Flucomazone, Dr. Bresler indicated it was the only known medication available to treat his condition.

Plaintiff rapidly lost weight and continued to experience cold sweats and excruciating pain in his lower back around the sciatic nerves.  The doctor prescribed pain pills, which did not control the pain.  Unable to get a full examination and unable to convince medical staff of the intense pain he felt, in April 2007 Plaintiff went to the clinic and lay down on the floor. The nurses tried to stop him from complaining and crying, but they did not assist him.  Dr. Jonathan Hamrick heard his loud cries, came out of his office, and asked why Plaintiff was crying.  Plaintiff explained about the agonizing pain in his lower back.  Dr. Hamrick escorted Plaintiff to have an x-ray taken.  The x-ray did not reveal any internal damage, so Dr. Hamrick ordered an MRI.  Nearly two months afterward, in June 2007, the MRI procedure was performed at Sierra Vista Hospital in San Luis Obispo.  The MRI showed a darker black mass that had spread to his lumbar region, causing inflammation of the spinal cord.  The infection

was eating into the bone and vertebrate from the inside out.  Recognizing the dangerous nature of the infection, the doctor indicated that Plaintiff needed immediate surgery or he would risk the possibility of paralysis from the waist down.  Two hours later, Plaintiff was admitted to the hospital for surgery.

The surgery took seven hours or more, and the surgeon removed a disk and part of the lower spinal cord, cut sciatic nerves, repaired vertebrates, and inserted a steel plate.  Plaintiff was in a body cast for weeks.  The medications he took at Sierra Vista Hospital never caused him allergic reactions like the medications from CSH.

Plaintiff alleges that as early as 2002, Defendants had specific scientific and health knowledge of the dangers of Valley Fever at Pleasant Valley State Prison (PVSP), which is only two hundred yards from CSH where Plaintiff contracted the disease.  Defendants were negligent and deliberately indifferent because "[i]n complete disregard of the dangerous disease posed to employees and patients at Coalinga State Hospital (CSH), Plaintiff and many other individuals were brought to the state institution against their will; and that this resulted in Plaintiff contracting [Valley Fever]"  First Amd Cmp, Doc. 15 at 5 ¶I.(2).  Valley Fever is caused by exposure to dust in areas endemic to the disease, and is potentially fatal.

Plaintiff alleges that Governor Schwartzenegger was aware of the dangers of Valley Fever at PVSP when ground was broken in the vicinity for the construction of CSH, and yet he allowed construction to proceed without interruption.  Similarly, Plaintiff alleges that Stephen Mayberg, Director of the DMH, gave his written approval to go ahead with the construction, despite scientific knowledge of dangers at the site.

Defendants failed to properly monitor the conditions which caused Plaintiff's injuries. Defendants also failed to properly monitor the employees at CSH.  Defendants acted on the assumption that the disease was not life threatening, and condoned the Department of Mental Health's policies which amount to deliberate indifference to the health and safety of patients at the state institutions.  As a person infected with Valley Fever, Plaintiff was denied the same accommodations as his peers at CSH, in violation of the ADA, the California Disabled Person's Act, and the California Dependent Adult Act.  The medical policies, practices, and lack of

1    medical personnel at CSH are a result of discrimination against the mental health patients at

2    CSH who are held pursuant to the Sexually Violent Predator Act.

3         Plaintiff requests monetary damages and declaratory relief.

4    **IV.    PLAINTIFF'S CLAIMS**

5         The Civil Rights Act under which this action was filed provides:

6              Every person who, under color of [state law] . . . subjects, or
               causes to be subjected, any citizen of the United States . . . to the
7              deprivation of any rights, privileges, or immunities secured by
               the Constitution . . . shall be liable to the party injured in an
8              action at law, suit in equity, or other proper proceeding for
               redress.
9

10   42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal

11   Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)

12   (internal quotations omitted).  "To the extent that the violation of a state law amounts to the

13   deprivation of a state-created interest that reaches beyond that guaranteed by the federal

14   Constitution, Section 1983 offers no redress."  Id.

15        To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted

16   under color of state law and (2) the defendant deprived him of rights secured by the

17   Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.

18   2006).  "A person 'subjects' another to the deprivation of a constitutional right, within the

19   meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts,

20   or omits to perform an act which he is legally required to do that causes the deprivation of

21   which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "The

22   requisite causal connection can be established not only by some kind of direct, personal

23   participation in the deprivation, but also by setting in motion a series of acts by others which

24   the actors knows or reasonably should know would cause others to inflict the constitutional

25   injury."  Id. at 743-44.

26        **A.    Supervisory Liability**

27        To the extent that Plaintiff alleges liability under § 1983 based on Defendants' roles as

28   supervisory officials, the Supreme Court has emphasized that the term "supervisory liability,"

loosely and commonly used by both courts and litigants alike, is a misnomer.  Iqbal, 556 U.S. at 677. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" Id. at 676.  Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct.  Id. at 677. Accordingly, Plaintiff fails to state a claim against any of the Defendants in their supervisory capacities.

### B.     Official Capacity

Plaintiff brings this action against Defendants in their official and individual capacities. Plaintiff may not bring suit for monetary damages against Defendants in their official capacities.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).  However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities.  Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law."  Id. at 25; Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009).  Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit.  Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

Accordingly, Plaintiff fails state a claim for damages against any of the Defendants in their official capacities.

### C.     No Personal Participation – defendants Ahlin, Fresno County Board of Supervisors, and Does 1-10

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her

own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77.  In the First Amended Complaint, Plaintiff did not allege any facts concerning personal acts by defendants Ahlin, members of the Fresno County Board of Supervisors, or  Does 1-10.  It is not sufficient to bring general allegations against "Defendants" without identifying the Defendants or describing personal acts that resulted in the violation of Plaintiff's rights.   Therefore, Plaintiff fails to state any claims against defendants Ahlin, the Fresno County Board of Supervisors, or Does 1-10.

### D.    Defendants Schwartzenegger and Mayberg

Plaintiff alleges that Governor Schwartzenegger was aware of the dangers of Valley Fever at PVSP when ground was broken in the vicinity for the construction of CSH, and yet he allowed construction to proceed without interruption.  Similarly, Plaintiff alleges that Stephen Mayberg, Director of the DMH, gave his written approval to go ahead with the construction, despite scientific knowledge of dangers at the site.   However, Plaintiff also states that Defendants "acted on the assumption that the disease was [not] life threatening."  First Amd Cmp, Doc. 12 ¶21.   These allegations are not sufficient to state a claim.  At most, Plaintiff states a claim for negligence, which is not cognizable under section 1983.

### E.    Discrimination - Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073

(2000); <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008); <u>North Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that the medical policies, practices, and lack of medical personnel at CSH are a result of discrimination against the mental health patients at CSH who are held pursuant to the Sexually Violent Predator Act. However, Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

**F.      Medical Claim – Civil Detainee**

As a civil detainee, Plaintiff's right to medical care is protected by the substantive component of the Due Process Clause. <u>Youngberg v. Romeo</u>, 457 U.S. 307, 315, 102 S.Ct. 2452 (1982). A determination whether Plaintiff's rights were violated requires "balancing of his liberty interests against the relevant state interests." <u>Id.</u> at 321. Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," but the Constitution requires only that courts ensure that professional judgment was exercised. <u>Id.</u> at 321-22. A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." <u>Id.</u> at 322-23. Under this "professional judgment" standard, mere negligence or medical malpractice does not violate the Constitution. See <u>Patten v. Nichols</u>, 274 F.3d 829, 852-43 (4th Cir. 2001) (applying <u>Youngberg</u> "professional judgment" standard to a denial of medical care claim by a civilly committed psychiatric patient and holding that more than negligence is required).

In the First Amended Complaint, Plaintiff states that Defendants were negligent and deliberately indifferent because "[i]n complete disregard of the dangerous disease posed to employees and patients at Coalinga State Hospital (CSH), Plaintiff and many other individuals

were brought to the state institution against their will; and that this resulted in Plaintiff contracting [Valley Fever]"  First Amd Cmp, Doc. 15 at 5 ¶I.(2).   However, Plaintiff has alleged facts that indicate, at most, negligence.

Plaintiff claims that Dr. Bresler failed to provide him with adequate medical care. However, Plaintiff's account shows that Dr. Bresler provided him with varying medical treatments as his illness developed.   When Plaintiff presented with initial symptoms, Dr. Bresler told him to sign up with the sick call nurse.  As the disease progressed, Dr. Bresler prescribed medication for Plaintiff, diagnosed him with pneumonia, isolated him, ordered x-rays, and took blood, urine, and sputum samples which revealed the diagnosis of Valley Fever. Plaintiff's allegations do not reflect acts by Dr. Bresler, or any of the medical personnel, that caused them to be responsible for Plaintiff's symptoms or complaints.

Thus, the Court finds that Plaintiff has not stated any viable claims under section 1983.

**G.**     **ADA Claims**

Plaintiff seeks to bring a claim under the ADA.   Title II of the Americans with Disabilities Act (ADA) "prohibit[s] discrimination on the basis of disability."   Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).   Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."   42 U.S.C. § 12132.   Title II of the ADA applies to inmates within state prisons.   Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).  "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability."   Lovell, 303 F.3d at 1052.

Plaintiff alleges that due to the fact that he is infected with Valley Fever, he has been denied "equal conditions of living similar to his peers at CSH."   First Amd Cmp, Doc. 15 at 13

¶23.   These vague allegations are not sufficient to state a claim under the ADA.  Plaintiff has not alleged that he is a qualified individual with a disability under the ADA, or that he was improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap.  Therefore, Plaintiff fails to state a claim under the ADA.

### H.      Negligence and Other State Law

Plaintiff alleges that Defendants acted negligently, failed to properly monitor the employees at CSH, and acted in violation of the California Disabled Person's Act and the California Dependent Adult Act.

State tort law, such as negligence, negligent failure to train and supervise, or violation of other state law, is not sufficient to state a claim for relief under § 1983.  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.  In this instance, the Court fails to find any cognizable federal claims in the First Amended Complaint.  Therefore, Plaintiff's claims based on state laws fail.

### V.      CONCLUSION AND ORDER

The Court finds that Plaintiff's First Amended Complaint fails to state any claims upon which relief can be granted under § 1983 or the ADA against any of the Defendants.  In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with ample guidance by the Court.   Plaintiff has now filed two complaints without alleging facts against any of the Defendants which state a claim under § 1983 or the ADA.  The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

///

///

///

Therefore, **IT IS HEREBY ORDERED** that:

1.      Pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this action is DISMISSED with prejudice for failure to state a claim upon which relief may be granted under § 1983 or the ADA; and

2.      The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

   Dated:   **May 3, 2013**                                    **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE