# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGAL SAMUELS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PAM AHLIN, et al.,<br><br>　　　　Defendants. | 1:10-cv-00585-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE DENIED<br><br>(ECF NO. 45)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I. BACKGROUND

Dougal Samuels ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff has asserted various claims in connection with contracting valley fever while housed at Coalinga State Hospital.

Plaintiff's case was initially dismissed at the screening stage by Magistrate Judge Gary S. Austin for failure to state a claim. (ECF No. 16) The Ninth Circuit reversed in part and remanded, stating "dismissal of Samuels's safe conditions claim was premature. Samuels alleged that defendants knew of the life-threatening risk of building Coalinga State Hospital in a highly endemic area for valley fever, but nonetheless approved or failed to stop the facility's construction. These allegations, liberally construed, were 'sufficient to warrant ordering [defendants] to file an answer.'" (ECF No. 22, at p. 3).

In lieu of filing an answer, certain defendants filed a motion to dismiss arguing that they are entitled to qualified immunity because it was not a clearly established violation of the Eighth Amendment to allow inmates to be exposed to a naturally occurring spore (the spore

1

that causes Valley Fever). (ECF No. 45-1, pgs. 2-3).

As the Court finds that Defendants are not entitled to qualified immunity at this stage in the proceedings, the Court will recommend that Defendants' motion to dismiss be denied.

## II. PROCEDURAL HISTORY

Plaintiff filed his initial complaint on April 5, 2010. (ECF No. 1) After giving Plaintiff leave to amend with legal guidance in a first screening order, (ECF No. 12), on May 3, 2013, Magistrate Judge Gary S. Austin (the assigned magistrate judge at the time) issued an order dismissing this case for failure to state a claim. (ECF No. 16).

Plaintiff appealed. (ECF No. 18). On August 21, 2014, The Ninth Circuit Court of Appeals issued an order that allowed the case to proceed on Plaintiff's safe conditions claim, stating that "dismissal of Samuels's safe conditions claim was premature." (ECF No. 22, p. 3).

On June 25, 2015, Plaintiff filed a "motion to provide the Court with the John Doe defendants as requested" (ECF No. 31), which was granted on October 9, 2015 (ECF No. 32). A Second Amended Complaint was then filed, but it omitted previously named defendants. (ECF No. 36). After the Court issued an order requesting clarification (ECF No. 37), and Plaintiff's assertion that the previously named defendants were supposed to be included (ECF No. 38), the Court issued an order granting Plaintiff leave to file a Third Amended Complaint. (ECF No. 39).

Plaintiff's Third Amended Complaint was screened, and the Court found that Plaintiff 'state[d] cognizable claims for violation of his safe conditions rights under the Due Process Clause against Defendants Pam Ahlin, Stephen Mayberg, Fresno County Board of Supervisors, Arnold Schwarzenegger, Audrey King, Brandon Price, Ron Withrow, Karin Hundal, Ron Howard Cynthia Radavasky." (ECF No. 41, p. 11). This case now proceeds on Plaintiff's Third Amended Complaint.

This case now proceeds on Plaintiff's Third Amended Complaint, filed on July 15, 2016. (ECF No. 40). Plaintiff's Third Amended Complaint was screened and the Court found that Plaintiff "state[d] cognizable claims for violation of his safe conditions rights under the Due Process Clause against Defendants Pam Ahlin, Stephen Mayberg, Fresno County Board of

Supervisors, Arnold Schwarzenegger, Audrey King, Brandon Price, Ron Withrow, Karin Hundal,[1] Ron Howard and Cynthia Radavasky." (ECF No. 41, p. 11) (footnote added).

On December 6, 2016, Defendants Pam Ahlin, Stephen Mayberg, Audrey King, Brandon Price, Ron Withrow, Kiran Hundal, Ron Howard and Cynthia Radavasky filed a motion to dismiss on the basis of qualified immunity. (ECF No. 45). On January 26, 2017, Defendant Arnold Schwarzenegger filed a "Notice of Joinder and Joinder of Defendant Arnold Schwarzenegger in Motion to Dismiss." (ECF No. 54). On March 1, 2017, Plaintiff filed an opposition to the motion to dismiss.[2] (ECF No. 58). On April 10, 2017, Defendants Pam Ahlin, Stephen Mayberg, Audrey King, Brandon Price, Ron Withrow, Kiran Hundal, Ron Howard, Cynthia Radavasky, and Arnold Schwarzenegger ("Defendants") filed a reply to Plaintiff's opposition. (ECF No. 67).

Defendants' motion to dismiss (ECF No. 45) is now before the Court.

### III. PLAINTIFF'S ALLEGATIONS IN HIS THIRD AMENDED COMPLAINT

Plaintiff filed his Third Amended complaint on July 15, 2016. (ECF No. 40). In the Third Amended Complaint, Plaintiff alleges the following.

Plaintiff is an African-American male, currently civilly detained at Coalinga State Hospital ("CSH") in Coalinga, California. Plaintiff named as defendants Pam Ahlin (ex-Executive Director of CSH), Stephen Mayberg (ex-Director of the California Department of States Hospitals), Fresno County Board of Supervisors, Arnold Schwartzenegger (ex-Governor of California), Audrey King (Executive Director of CSH), Brandon Price (interim Director of CSH), Robert Withrow (Medical Director of CSH), Kiran Hundal (Nursing Administrator),

---

[1] According to Defendants, the correct spelling is "Kiran Hundal." (ECF No. 45-1, p.2 n. 1).
[2] Plaintiff's opposition is labeled as "Plaintiff's Motion in Objection to Defendants' Summary Judgment and Memorandum of Points and Athorities [sic] in support of motion." (ECF No. 58). The Court notes that the motion before the court is a motion for dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and not a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Pursuant to the Order entered on March 6, 2017, the opposition is treated as being signed under penalty of perjury. (ECF No. 60).

Ron Howard (Plant Operations Manager), and Cynthia A. Radavsky (Deputy Director of Long Term Care Services at CSH).[3]

Plaintiff alleges that Defendants Ahlin, Mayberg, Fresno County Board of Supervisors, Schwartzenegger, King, Price, Withrow, Hundal, Howard, and Radavsky were aware of dangerous conditions at CSH but took no protective measures for his health and safety to prevent Plaintiff's infection by the disease known as Valley Fever. Plaintiff alleges that on February 16, 2006, he was transferred to CSH. There were rumors and scientific information that the area surrounding CSH was extremely lethal because Valley Fever spores were known to be in the soil. Plaintiff and other detainees were assured by employees that the environment was not life threatening, and because the hospital was a hermetically sealed environment, the chance of contracting an infection was a million to one. Plaintiff became infected with Valley Fever a year after his transfer.

Defendant Brandon Price, the Hospital Administrator when Plaintiff contracted the disease, knew or should have known that the area where CSH was built had been declared hazardous and life-threatening because of Valley Fever. Defendant Price intentionally concealed the medical and scientific facts, in spite of the number of patients infected at CSH and Pleasant Valley State Prison (PVSP) next door.

Defendant Kiran Hundal, the Nursing Administrator at CSH, knew of the risk that Valley Fever posed to patients of color, but deliberately hid all information about the disease.

Defendant Robert Withrow, the Medical Director, breached his duty to inform patients and employees of the danger of the disease, in violation of the Health and Safety Code. Plaintiff asserts that if Plaintiff had known about the dangers, he might have avoided the infection.

Defendant Ron Howard, the Plant Operations Manager, knows or knew about the lethal nature of the Valley Fever disease, but he insisted that the ventilation system did not need an

---

[3] Plaintiff also named as defendants Dr. Peter Bresler, California Department of Corrections and Rehabilitation, Orange County Public Defender's Office, and Office of Patients' Rights. (ECF No. 40). The claims against these defendants have been dismissed. (ECF No. 41).

upgrade to prevent entry of the windblown spores into the housing area. Plaintiff assumes he contracted the disease through the ventilation system, which is defective and unable to provide sufficient clean air circulation.

Defendant Cynthia A. Radavsky, the Deputy Director of Long Term Care Services at CSH, was responsible for making decisions about complaints by patients at CSH. Defendant Radavsky brushed off the dangers of Valley Fever at CSH, in spite of scientific evidence.

Defendant Audrey King, the Executive Director at CSH, was the Hospital Administrator when Plaintiff became infected. She had the opportunity to inform patients and employees about methods to avoid infection, but she concealed scientific and medical information and failed to implement safety measures.

Defendant Pam Ahlin was the Executive Director of CSH at the relevant time. She was in charge of the facility when Plaintiff was infected with Valley Fever. Plaintiff holds her personally and officially liable for negligent and reckless actions that caused his medical injury.

Defendant Stephen Mayberg was the Director of the California Department of States Hospitals at the relevant time. He was in charge of the five mental health institutions located in California. During the time CSH was being constructed, he was aware of the life-threatening danger of building next to PVSP but allowed individuals to be housed at CSH after its opening.

Defendant Fresno County Board of Supervisors was told of the future dangers of Valley Fever before the ground was broken to build CSH, but did not stop construction of the hospital.

Arnold Schwarzenegger, the Governor of the State of California during the relevant time, was aware of the dangers of building next to PVSP but gave his written approval to go ahead with the construction.

Plaintiff alleges that defendants Pam Ahlin, Stephen Mayberg, Fresno County Board of Supervisors, Arnold Schwarzenegger, Audrey King, Brandon Price, Ron Withrow, Kiran Hundal, Ron Howard, and Cynthia Radavsky knew or should have known about the risks to patients contracting Valley Fever at CSH, but failed to stop construction of CSH or implement measures to lessen the risk of infection by Valley Fever at CSH.

After screening Plaintiff's Third Amended Complaint, the Court found that Plaintiff "state[d] cognizable claims for violation of his safe conditions rights under the Due Process Clause against Defendants Pam Ahlin, Stephen Mayberg, Fresno County Board of Supervisors, Arnold Schwarzenegger, Audrey King, Brandon Price, Ron Withrow, Karin Hundal, Ron Howard and Cynthia Radavasky." (ECF No. 41, p. 11).

### IV. LEGAL STANDARDS

#### a. Motion to Dismiss

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

### b. Fourteenth Amendment and Conditions of Confinement

As a civil detainee, Plaintiff is entitled to treatment more considerate than that afforded pretrial detainees or convicted criminals. Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004). His right to constitutionally adequate conditions of confinement is protected by the substantive component of the Due Process Clause. Youngberg v. Romeo, 457 U.S. 307, 315 (1982).

It is clearly established law in this circuit that "'(1) [civil detainee's] have a constitutional right to be safe in the state institution to which they are committed, and that (2) in the face of known threats to [a civil detainee's] safety, state officials may not act (or fail to act) with conscious indifference, but must take adequate steps in accordance with professional standards to prevent harm from occurring.'" Ammons v. Washington Dep't of Soc. & Health Servs., 648 F.3d 1020, 1030 (9th Cir. 2011) (quoting Neely v. Feinstein, 50 F.3d 1502, 1508 (9th Cir. 1995).

However, civil detainees are not free persons with "full civil rights," Seaton v.

Mayberg, 610 F.3d 530, 535 (9th Cir. 2010), and it is well-established that effective institutional management is a legitimate, non-punitive governmental interest, Jones, 393 F.3d at 932.

### c. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al–Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"Since qualified immunity is a defense, the burden of pleading it rests with the defendant." See Fed. Rule Civ. Proc. 8(c) (defendant must plead any 'matter constituting an avoidance or affirmative defense'); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1271 (1969). It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith." Gomez v. Toledo, 446 U.S. 635, 640 (1980).

V. **ANALYSIS OF DEFENDANTS' MOTION TO DISMISS – QUALIFIED IMMUNITY FROM PLAINTIFF'S FOURTEENTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM REGARDING EXPOSURE TO VALLEY FEVER**

Defendants argue that they are entitled to qualified immunity from Plaintiff's Fourteenth Amendment conditions of confinement claim regarding Valley Fever claim. (ECF No. 45-1, p. 2). Defendants allege that qualified immunity applies because it was not a clearly established violation of the Fourteenth Amendment to allow inmates to be exposed to a

naturally occurring spore (the spore that causes Valley Fever).  (Id. at 2-3).  Defendants assert that "[b]ased on the status of the law it cannot be concluded that defendants' official actions or omissions related to Valley Fever were unlawful in either 2008 or today, and would subject them to liability."  (Id. at 6).  Defendants cite to Smith v. Schwarzenegger, 137 F. Supp. 3d 1233, 1251 (E.D. Cal. Oct. 7, 2015) and Cunningham v. Kramer, 178 F. Supp.3d 999, 2016 WL 1545303, *4 as examples that "under any definition, the unsettled law involving Valley Fever required a finding that qualified immunity applied."  (ECF No. 45-1, pgs. 6-7).

Plaintiff argues[4] that Valley Fever "is a highly dangerous and crippling disease that could infect any patient at any time with a severe case of Arthroconidia or [Coccidioides] []immitis from any point within the endemic areas; or, even possibly a few hundred kilometers outside of endemic areas, i.e., given windy, dusty, conditions as documented through scientific research.  The fact that the individual [defendants], as named in the complaint, failed to intervene to protect [Plaintiff] against the risk of infection which they knew or should have known, makes their actions deliberate and intentional point of liability."  (ECF No. 58, p. 8).  Plaintiff alleges that Defendants received reports on and were aware of the dangerous nature of Valley Fever and yet Defendants showed "an attitude of disregard to the danger" and allowed the inmates to have continued exposure to the spores.  (Id. at 8-10).  Plaintiff also alleges that "it was well acknowledged among patients and staff at [C]SH, the location of the facility was built on soil that held very high contents of [Coccidioides] []immitis spores.  Nonetheless, patients were sent to the hospital in spite of the obvious threat to the health of African-American patients, like [Plaintiff]."  (Id. at 9).

While the law regarding when qualified immunity applies in the context of Valley Fever is unsettled, the Court has found Magistrate Judge Michael J. Seng's analysis in Allen v.

---

[4] In Plaintiff's opposition, he first argues that, through this motion to dismiss, "Defendants are now requesting that the Court revisit its prior [screening] order because they are under the impression that qualified immunity should apply to bar the safe conditions claim against the remaining Defendants.  Unfortunately, Plaintiff alleges that the Court does not have the liberty to revisit its previous decision simply because it would be an abuse of discretion and a violation of due process guarantee."  (ECF No. 58, p. 2).  Neither this Court nor the Ninth Circuit addressed the issue of qualified immunity in this case.  As such, the current motion is proper.

Kramer, No. 1:15-CV-01609-DAD-MJS-PC, 2016 WL 4613360 (E.D. Cal. Aug. 17, 2016) persuasive.[5] See also Williams v. Biter, No. 1:14-cv-02076-DAD-EPG-PC, 2017 WL 431353, at *10-13 (E.D. Ca. Jan 31, 2017) (finding Allen persuasive and ultimately determining that qualified immunity did not apply at the motion to dismiss stage of the case). Judge Seng notes Allen that:

> In those Valley Fever cases that have reached the question of qualified immunity, the constitutional right has been defined as an inmate's right to be free from exposure to the environmental toxin, coccidiomycosis. See, e.g., Jackson I, 2015 WL 5522088, at *17 ("[T]he constitutional right at issue in this case must take into account the specific Valley Fever context in which this case arose"), overruled on other grounds by Jackson II; Smith v. Schwarzenegger, Case No. 1:14-cv-60-LJO-SAB, 137 F. Supp. 3d 1233, 1243 (E.D. Cal. Oct. 7, 2015), appeal docketed Case No. 15-17155 (9th Cir. Oct. 29, 2015) (defining the right in the context of "an inmate's exposure to cocci while incarcerated"); Jackson II, 134 F. Supp. 3d at 1238 (same); Smith, 2016 WL 398766, at *3 (noting "the lack of authority delineating the contours of the rights of inmates vis-à-vis exposure to coccidiomycosis."). See also Hines v. Youssef, Case No. 1:13-cv-0357-AWI-JLT, 2015 WL 2385095, at *9 (E.D. Cal. May 19, 2015), appeal docketed, No. 15-16145 (9th Cir. June 8, 2015) ("[I]n the context of the application of criteria for exclusion from endorsement to prisons in the cocci hyper-endemic zone in 2008, the right to exclusion on account of any factors not previously recommended by an authoritative source or ordered by the receiver prior to the time of endorsement was not clearly established.")
>
> Under this factually specific definition, it is true that there is no controlling authority regarding an inmate's right to be free of exposure to coccidiomycosis, and it is also true that "there has been longstanding disagreement among the judges of this district as to whether and under what circumstances inmates housed at prisons in the San Joaquin Valley, where Valley Fever is endemic, may state an Eighth Amendment claim for being exposed to Valley Fever spores while incarcerated." See Jackson II, 134 F. Supp. 3d at 1240 (citing Jones v. Hartley, Case No. 1:13-cv-1590-AWI-GSA, 2015 WL 1276708, at *2-3 (E.D. Cal. Mar. 19, 2015) (collecting cases)).
>
> But this level of specificity is precisely the type cautioned against by the Supreme Court. Determining whether the contours of a right are sufficiently

---

[5]After Judge Seng issued the order finding that qualified immunity did not protect the defendants at the current stage of the proceeding, he issued findings and recommendations, finding cognizable claims against some of those defendants. Allen v. Kramer, 2016 U.S. Dist. LEXIS 130030, *1 (E.D. Cal. Sept. 22, 2016). District Judge Dale A. Drozd adopted the findings and recommendations in full. Allen v. Kramer, 2016 U.S. Dist. LEXIS 162844, *2 (E.D. Cal. Nov. 23, 2016).

clear does "not require a case directly on point." al-Kidd, 563 U.S. at 741. Rather, it requires that "existing precedent must have placed the statutory or constitutional question beyond debate." Id. In that regard, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 US 730, 741 (2002). Indeed, the earlier cases need not even have facts that are "fundamentally similar" or "materially similar." See id. Though such cases "can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Id.

Consistent with other judges in this District, this Court declines to define the constitutional right at a high level of generality. That is to say, the right cannot be defined as the right to be free from mere exposure to all environmental toxins. However, the undersigned also declines to swing the pendulum the other way and define the right at a highly specific level relating only to the particular toxin at issue here, i.e., coccidiomycosis. To be so fact-specific would likely entitle a defendant to qualified immunity in every novel factual scenario. This Court thus settles on a definition that falls somewhere in between.

Allen, 2016 WL 4613360, at *5-6.

After conducting extensive analysis and evaluation of relevant case law, Judge Seng concluded that the relevant clearly established legal right was that "**Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in Plaintiff's situation or because Plaintiff has a particular susceptibility to the hazard**." Id. at *6. In coming to this conclusion, Judge Seng relied on Helling v. McKinney, 509 U.S. 25 (1993):[6] "This definition takes into account the facts of this case without being overly and unnecessarily specific. It also stems directly from the holding of Helling v. McKinney, 509 U.S. 25 (1993), which the Court concludes 'placed the statutory or constitutional question beyond debate.' al-Kidd, 563 U.S. at 741." Allen, 2016 WL 4613360, at *6. Additionally, as Judge Seng noted:

---

[6] In Helling, the plaintiff alleged that he was assigned to a cell with another inmate who smoked five packs of cigarettes a day. Helling v. McKinney, 509 U.S. 25, 28 (1993). One issue was whether this exposure to environmental tobacco smoke (ETS) could state a valid claim under the Eighth Amendment, even though Plaintiff had not yet suffered harm. Id. at 30. The Supreme Court upheld the decision of the Court of Appeals, finding that the plaintiff stated "a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." Id. at 35.

Though Helling directly addressed an inmate's exposure to ETS, it tacitly acknowledged other situations in which environmental factors can pose an unreasonable risk to an inmate's health, including exposure to "infectious maladies such as hepatitis and venereal disease" caused by overcrowding, unsafe drinking water, and "toxic or other substances." 509 U.S. at 33, 35. Along these lines, courts have relied on Helling to hold that an inmate has the right to be free from exposure to another environmental toxin, asbestos. In Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995), for example, the Ninth Circuit was asked to consider whether the district court improperly entered summary judgment for the defendants on plaintiff's Eighth Amendment conditions of confinement claim: "[T]he critical question before the district court was whether the defendants acted with 'deliberate indifference' in exposing Wallis to the asbestos in the [prison's] attics." Id. at 1076 (citing Helling). Noting that "[i]t is uncontroverted that asbestos poses a serious risk to human health," the Court reversed the grant of summary judgment after concluding that the evidence established that the defendants knew of the existence of the asbestos in the attic and the threat to the inmates' health from exposure to it but nonetheless forced plaintiff to clean the attic without protection. Id. See also McNeil v. Lane, 16 F.3d 123 (7th Cir. 1993) (finding that plaintiff's claim of mere exposure to asbestos insufficient to state a claim under Helling); Doyle v. Coombe, 976 F. Supp. 183, 188 (W.D.N.Y. 1997) ("It was not until 1993 that the United States Supreme Court held [in Helling] that an Eighth Amendment claim may be established from exposure to substances which might cause a delayed injury."); Gonyer v. McDonald, 874 F. Supp. 464, 466 (D. Mass. Feb. 1, 1995) (citing Helling in finding a cognizable Eighth Amendment claim for exposure to asbestos); Carter v. Smith, 2015 WL 4322317, at *7 (N.D. Cal. July 15, 2015) ("Exposure to toxic substances may be a sufficiently serious condition to establish the first prong of an Eighth Amendment claim, depending on the circumstances of such exposure, as explained by the Supreme Court in Helling .... Although Helling was a second-hand smoke case, the rule also applies to asbestos exposure.")

Helling has also been cited in cases involving exposure to other environmental factors claimed to pose an unreasonable risk of harm to health, including contagious diseases caused by overcrowding conditions, Brown v. Mitchell, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004); contaminated water, Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001); compelled use of chemical toilets, Masonoff v. DuBois, 899 F. Supp. 782, 797 (D. Mass. Sep. 11, 1995) ("[I]f the future harm resulting from exposure to second-hand smoke can give rise to an Eighth Amendment violation, then surely daily contact with a hazardous substance which causes rashes, burning, tearing eyes and headaches meets the objective part of the test for a violation of the Eighth Amendment."); paint toxins, Crawford v. Coughlin, 43 F. Supp. 2d 319, 325 (W.D.N.Y. 1999); and other inmates' blood, Randles v. Singletary, 2001 WL 1736881, at *2 (M.D. Fla. Aug. 10, 2001).

Allen, 2016 WL 4613360, at *7-8 (footnote omitted).

The Court believes that, as laid out in Judge Seng's order (id.), defining the right in this way strikes the appropriate balance between taking into account the facts of this case and the Supreme Court's admonition in al-Kidd, 563 U.S. at 742 that courts should "not define clearly established law at a high level of generality." Thus, this Court evaluates Defendants' qualified immunity defense against what this Court believes is the right at issue, namely that **"Plaintiff has a right to be free from exposure to an environmental hazard that poses an unreasonable risk of serious damage to his health whether because the levels of that environmental hazard are too high for anyone in Plaintiff's situation or because Plaintiff has a particular susceptibility to the hazard."** Allen, 2016 WL 4613360, at *6.

The Court then looks to the allegations in Plaintiff's complaint to determine if Plaintiff has alleged conduct that, construing the facts in favor of Plaintiff, violates this right, and that every reasonable official would have understood to violate this right. Here, Plaintiff has alleged that he was exposed to an environmental hazard that posed an unreasonable risk of serious damage to his health (Valley Fever), and that he has a particular susceptibility to that hazard, i.e., Valley Fever, because he is an African American. (ECF No. 40, pgs. 7, 21-22). Plaintiff further alleges that Defendants were aware of this risk, but did nothing to remedy it. As a result of these conditions, Plaintiff claims that he "suffered a severe infection of the Valley Fever (VF) disease." (Id. at 7).

Thus, Plaintiff has pled facts showing that his rights were violated. Additionally, based on the case law described above and construing facts liberally in favor of Plaintiff, Plaintiff has pled facts showing that every reasonable official would have understood that their actions violated Plaintiff's rights. Therefore, the Court recommends finding that, at this stage in the proceedings, Defendants are not entitled to qualified immunity. However, the Court notes that this finding is based solely on construing the facts alleged as true and in favor of Plaintiff, which the Court must at this stage in litigation. This finding is without prejudice to Defendants asserting this defense at a later stage in the proceeding.

\\\

## VI. CONCLUSION

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to dismiss (ECF No. 45) be DENIED, without prejudice to Defendants asserting the defense of qualified immunity at a later stage in the proceeding.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **ten (10) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 26, 2017**        /s/ Erica P. Grosjean
         UNITED STATES MAGISTRATE JUDGE