UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGAL SAMUELS, | No. 1:10-cv-00585-DAD-EPG |
| Plaintiff, | |
| v. | ORDER ADOPTING FINDINGS AND RECOMMENDATIONS AND DENYING MOTIONS TO DISMISS |
| PAM AHLIN, et al., | |
| Defendants. | (Doc. Nos. 45, 69, 91, 100) |

Plaintiff is a civil detainee proceeding pro se and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. This case now proceeds on plaintiff's third amended complaint, filed on July 15, 2016. (Doc. No. 40.) The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Defendants Ahlin, Howard, Hundal, King, Mayberg, Price, Radavasky, and Withrow (the "State defendants") filed a motion to dismiss the complaint on qualified immunity grounds on December 6, 2016. (Doc. No. 45.) Defendants Borgeas, Maqsiq, Mendes, Pacheco, and Quintero, represented by real party in interest the County of Fresno (the "County defendants"), filed a motion to dismiss on February 5, 2018. (Doc. No. 91.) The assigned magistrate judge issued findings and recommendations on April 27, 2017 and September 19, 2018, and in each recommended that the respective motion to dismiss be denied. (Doc. Nos. 69, 100.)

Plaintiff objected on May 30, 2017 to the earlier set of findings and recommendations, because he believes that defendants should be precluded from raising a qualified immunity

1

defense at a later stage of this case. (Doc. No. 72.) The State defendants filed a reply on June 5, 2017. (Doc. No. 73.) On September 19, 2018, defendants filed objections to the September 5, 2018 findings and recommendations. (Doc. No. 101.) Plaintiff did not file a reply to those objections.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 304, the undersigned has conducted a *de novo* review of this case. Having carefully reviewed the entire file, the undersigned concludes the findings and recommendations are supported by the record and proper analysis. In particular, the undersigned agrees with the magistrate judge's recommendation that in this case, issues of qualified immunity are best addressed at a later point in the litigation.

In various decisions both the Supreme Court and the Ninth Circuit have concluded that exposure to hazardous environmental conditions in a prison, including toxic substances, dangerous work environments, temperature extremes, dangerous diseases, and more, can form the basis of an Eighth Amendment conditions of confinement claim. *See Helling v. McKinney*, 509 U.S. 25, 28–29 (1993) (upholding Eighth Amendment claim based upon exposure to tobacco smoke); *Morgan v. Morgensen*, 465 F.3d 1041, 1047 (9th Cir. 2006) (holding that it was clearly established law that a "safety hazard in an occupational area" violated prisoner's Eighth Amendment rights); *Keenan v. Hall*, 83 F.3d 1083, 1089–90 (9th Cir. 1996) (concluding that deprivation of outdoor exercise, excessive noise and lighting, lack of ventilation, inadequate access to basic hygiene supplies, and inadequate food and water were sufficient to state an Eighth Amendment claim); *Wallis v. Baldwin*, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (noting asbestos exposure could serve as the basis for an Eighth Amendment claim); *Kelley v. Borg*, 60 F.3d 664, 666–67 (9th Cir. 1995) (holding that the law was sufficiently clearly established to allow an Eighth Amendment claim for failing to remove inmate from cell where he was exposed to unidentified "fumes" which rendered him unconscious to proceed); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (noting inadequate heat can permit Eighth Amendment claim). This principle is also well-established by the decisions of other circuit courts. *See, e.g., Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015) (identifying "the well-established Eighth

Amendment right not to be subjected to extremely dangerous temperatures without adequate ameliorative measures"); *Powers v. Snyder*, 484 F.3d 929, 931 (7th Cir. 2007) (exposure of prisoner to hepatitis or other serious diseases can state claim under Eighth Amendment); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (noting that "[a]ny number of opinions" demonstrate that environmental conditions such as flooding and exposure to blood and feces in cells can form the basis of an Eighth Amendment claim); *Atkinson v. Taylor*, 316 F.3d 257, 268–69 (3d Cir. 2003) (collecting cases from the Second, Fifth, Sixth, Seventh, and Eighth Circuits concerning exposure to environmental tobacco smoke); *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001) (concluding the law was sufficiently clearly established to permit Eighth Amendment claims concerning cells flooded with sewage to proceed); *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (exposure to human waste can state Eighth Amendment claim because it "carries a significant risk of contracting infectious diseases such a Hepatitis A, shigella, and others"); *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (Eighth Amendment claim can be based on "showing that the inmate was exposed to unreasonably high levels of environmental toxins"); *Warren v. Keane*, 196 F.3d 330 (2d Cir. 1999) (recognizing Eighth Amendment claims for exposure to both second-hand smoke and asbestos); *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) ("[A] reasonable person would have understood that exposing an inmate to friable asbestos could violate the Eighth Amendment."); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (exposure to raw sewage can state Eighth Amendment claim); *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir. 1991) ("The right of prisoners to adequate heat and shelter was known in 1982."); *DeGidio v. Pung*, 920 F.2d 525, 531–33 (8th Cir. 1990) (upholding Eighth Amendment claims based on exposure to tuberculosis); *see also Johnson v. Epps*, 479 Fed. App'x 583, 590–91 (5th Cir. 2012) (exposure to unsterilized barbering instruments potentially contaminated with HIV-positive blood sufficient to state Eighth Amendment claim); *Loftin v. Dalessandri*, 3 Fed. App'x 658, 660–63 (10th Cir. 2001) (recognizing that an inmate could state an Eighth Amendment claim for exposure to tuberculosis). In short, a reasonable prison official knows the Constitution does not permit them to knowingly subject inmates to environmental conditions that pose a serious risk of harm, to their health or

otherwise, without seeking to abate those risks.

The judges of the Eastern District of California, where almost all cases involving Eighth Amendment claims based upon exposure to Valley Fever emanate from, have differed on the proper application of qualified immunity in Valley Fever cases. *Compare Allen v. Kramer*, No. 1:15-cv-01609-DAD-MJS, 2016 WL 4613360, at *7–9 (E.D. Cal. Aug. 17, 2016) with *Jackson v. Brown*, 134 F. Supp. 3d 1237, 1248 (E.D. Cal. 2015).[1] Nonetheless, the undersigned concludes that it is inappropriate to hold at the pleading stage—i.e., no matter what the evidence might show—that a prison official could not have reasonably known he was violating the Constitution by intentionally and knowingly exposing a high-risk inmate to an increased risk of contracting Valley Fever.

In this regard, a key issue in Eighth Amendment claims such as this one is the level of knowledge that defendants possessed about both the existence and seriousness of the harm which faced plaintiff. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *Morgan*, 465 F.3d at 1047 (noting that the inmate had alerted prison officials to the hazardous condition but had been ordered to return to work anyway); *Wallis*, 70 F.3d at 1077 (highlighting specific evidence showing the defendants "knew of the existence of and dangers posed by asbestos in the [prison's] attics").

Of course, it is well-established that Valley Fever can pose an objectively serious health risk, at least to certain individuals. As the Ninth Circuit has previously recognized:

/////

---

[1] In part, due to these seemingly divergent views on this issue, the undersigned has delayed issuing this and several other orders in cases involving assertion of a qualified immunity defense to Eighth Amendment claims based upon exposure to Valley Fever while awaiting an anticipated Ninth Circuit decision addressing this issue. In this regard, the court notes that oral argument was held on May 17, 2017, before the Ninth Circuit in the consolidated matter of *Hines v. Youseff, et al.*, Nos. 15-16145, 15-17076, 15-17155, 15-17201 (9th Cir. 2015), in which the issue is presented. However, given the lapse of time since that case was argued with no decision having been rendered, the undersigned has concluded that any further delay in these proceedings is unwarranted.

4

> According to the Center for Disease Control and Prevention ("CDC"), "[s]ymptomatic coccidioidomycosis [Valley Fever], which occurs in approximately 40% of all infections, has a wide clinical spectrum, including mild influenza-like illness, severe pneumonia, and disseminated disease." The disseminated form of the disease—that is, when the fungus spreads from the lungs to the body's other organs—is the most serious. Disseminated cocci may cause miliary tuberculosis, bone and joint infections (including osteomyelitis), skin disease, soft tissue abscesses, and meningitis.

*Edison v. United States*, 822 F.3d 510, 514–15 (9th Cir. 2015); *see also Zurich Ins. Co. v. Sigourney*, 278 F.2d 826, 828 (9th Cir. 1960) (noting there was "no doubt" the appellee was "now totally disabled from a disease known as occidioidomycosis—called on the West Coast 'San Joaquin Valley Fever'").

If defendants knew of a serious health risk to plaintiff and nevertheless subjected him to it without a sufficient penological justification—for example, simply because the Supreme Court, Ninth Circuit or district court had not yet ordered them to abate this specific danger—it is doubtful in the undersigned's view that they could avail themselves of the shield of qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("Officials can still be on notice that their conduct violates established law even in novel factual circumstances."); *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) ("[A] plaintiff need not find a case with identical facts in order to survive a defense of qualified immunity."); *Serrano v. Francis*, 345 F.3d 1071, 1076–77 (9th Cir. 2003).

While it may emerge through the course of these proceedings that one or more of plaintiff's allegations are not supported by the evidence, the allegations provide a sufficient basis upon which to deny the invocation of qualified immunity at this stage of these proceedings. *See Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) ("Our denial of qualified immunity at this stage of the proceedings does not mean that this case must go to trial" because "[o]nce an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity.") (quoting *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016)). Defendants' motions to dismiss on qualified immunity grounds are therefore

properly denied.  However, for these same reasons plaintiff's request that defendants be precluded from raising the issue of qualified immunity at a later time must be denied.

Finally, the County defendants objected to the latter set of findings and recommendations on September 19, 2018, claiming first that the court could determine at the pleading stage (i.e., as a matter of law) that the County lacked any authority over the construction of the hospital by the state.  (Doc. No. 101 at 2–4.)  The undersigned observes that in making their objections the County defendants rely on "the undisputed facts."  (*Id.* at 3.)  "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).  The court will decline to convert this motion into a motion for summary judgment under Rule 56.  The County defendants also object to the September 5, 2018 findings and recommendations on the basis that none of the current board members were board members at the time of the construction in question.  (Doc. No. 101 at 4–6.)  However, the County defendants cite absolutely no authority demonstrating that the magistrate judge's findings and recommendations should be rejected on this ground.

Accordingly:

1. The findings and recommendations issued on April 27, 2017 and September 19, 2018 (Doc. Nos. 69 and 100) are adopted in full;
2. The motions to dismiss filed on December 6, 2016 and February 5, 2018 (Doc. Nos. 45 and 91) are denied;
3. Both the County defendants and the State defendants are directed to file an answer within twenty-one (21) days of service of this order; and
4. The matter is referred back to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:  **September 27, 2018**

_____
UNITED STATES DISTRICT JUDGE